UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br>v.<br><br>CHARLES ALLEN,<br><br>         Defendant. | Case No. 1:19-cr-00009-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Charles Allen's Motion to Reduce Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 74. The Government has filed an opposition to Allen's Motion. Dkt. 77. Allen filed a reply soon after. Dkt. 78. The matter is ripe for the Court's consideration.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court DENIES the Motion.

## II. BACKGROUND

On January 11, 2021, after pleading guilty to one count of possession of an unregistered firearm, the Court sentenced Charles Allen to 24 months of incarceration with three years of supervised release to follow. Dkt. 66. Allen is currently incarcerated at

Federal Correctional Institution Sheridan ("FCI Sheridan") in Sheridan, Oregon, with an anticipated release date of June 19, 2022. Dkt. 74, at 1–2.

On September 2, 2021, Allen filed the instant Motion to Reduce Sentence. Dkt. 74. As required, Allen first petitioned the Warden at FCI Sheridan for release. Dkt. 74-1, at 16–17. The Warden has not responded. Nevertheless, because at least 30 days have passed since the submission of the request, Allen may petition the Court for relief. *Id.* Allen bases his request on his age, the risk of being exposed to COVID-19, and several underlying health conditions, including "obesity, PTSD, anxiety, hypertension, bad heart and mental health issues." Dkt. 74, at 3. Furthermore, Allen argues his request should be granted so that he may return home to care for his ill wife. *Id*. at 1; 4–5. Allen previously contracted, and recovered from, COVID-19 before entering a BOP facility. Dkt. 77-1, at 34. Further, Allen has tested negative for COVID-19 throughout the entirety of his incarceration at a BOP facility.  *Id*. at 112–20. Allen refused the Moderna COVID-19 vaccine on April 12, 2021.  Dkt. 77-2, at 2.

### III. LEGAL STANDARD

Allen seeks compassionate release under the First Step Act ("FSA"), newly amended 18 U.S.C. § 3582(c)(1)(A), which allows a court to modify a sentence under certain circumstances.[1] In order to grant compassionate release, a district court must, as a

---

[1] "Prior to the passage of the FSA, only the Director of the Bureau of Prisons . . . could file a motion for compassionate release, and that very rarely happened." *United States v. Shields*, 2019 WL 2359231, at *1 (N.D. Cal. June 4, 2019) (quoting *United States v. Gutierrez*, 2019 WL 1472320, at *1 (D.N.M. Apr. 3, 2019). The FSA amended 18 U.S.C. § 3582(c)(1)(A) to permit modification of a term of imprisonment upon motion of the Director of the BOP or upon motion of the defendant after the defendant has exhausted his/her administrative rights. FSA, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

MEMORANDUM DECISION AND ORDER - 2

threshold matter, determine whether a defendant has exhausted his or her administrative remedies. *Id*. Next, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction," and the reduction is "consistent with applicable policy statements" issued by the U.S. Sentencing Commission.[2] *Id*. If the latter criteria are met, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. *Id*.; *United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019).

## IV. DISCUSSION

**A. Exhaustion of Administrative Remedies**

The FSA allows a motion for modification to be made by either the Director of the BOP, or by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). In addition, "[e]xhaustion occurs when the BOP denies a defendant's [motion for compassionate release]." *United States v. Mondaca*, No. 89-cr-0655 DMS, 2020 WL 1029024, at *2 (S.D. Cal. March 3, 2020).

Allen submitted a request for Compassionate Release with the Warden at FCI Sheridan on July 20, 2021, and there has been no response. Dkt. 74-1, at 16. The

---

[2] Congress did not define what constitutes "extraordinary and compelling" reasons; instead, it deferred consideration of the matter to the Sentencing Commission. *Rodriguez*, 424 F. Supp. 3d at 681 (citing 18 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.").

Government agrees that more than 30 days have passed since Allen's request to the warden. Dkt. 77, at 3. Because Allen filed his present Motion 30 days after his request to the Warden with no response, the Court finds that he has exhausted his administrative remedies.

### B. Extraordinary and Compelling Reasons

Having determined that Allen has exhausted his administrative remedies, the Court must next consider whether "extraordinary and compelling reasons" warrant a permanent reduction in his sentence, and whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Allen bears the burden of establishing that compelling and extraordinary reasons exist to justify compassionate release. *United States v. Holden*, 452 F. Supp. 3d 964, 969 (D. Or. Apr. 6, 2020).

Before passage of the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios: (A) medical conditions of the defendant; (B) age of the defendant; (C) certain family circumstances; and (D) as determined by the Director of the BOP, other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. U.S.S.G. § 1B1.13 Application Note 1.

However, the Sentencing Commission "never harmonized its policy statements with the FSA." *Rodriguez*, 424 F. Supp. 3d at 680 (quoting *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019)). "Rather, the outdated policy statements still assume compassionate release 'may be granted only upon motion by the Director of the Bureau of Prisons.'" *Brown*, 411 F. Supp. 3d at 449 (quoting U.S.S.G. § 1B1.13 Application Note 1).

MEMORANDUM DECISION AND ORDER - 4

This assumption is no longer consistent with the law under the FSA, which allows defendants to seek relief directly from the court. As such, the question of whether district courts are strictly bound by the Sentencing Commission's statements in U.S.S.G. § 1B1.13 when considering prisoners' motions for compassionate release—as they are when considering motions by the Director of the BOP—was momentarily left open. The Ninth Circuit has recently answered that question in the negative. *See United States v. Aruda*, 993 F.3d 797, 801 (9th Cir. 2021) (holding that "the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant."). Therefore, the guidelines in U.S.S.G. § 1B1.13 "may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.*

Nonetheless, Allen's motion suggests that one of the specific scenarios set out in U.S.S.G. § 1B1.13 applies in this case. He argues that the threat of contracting COVID-19, in conjunction with an elevated risk of severe illness due to his age, "obesity, PTSD, anxiety, hypertension, bad heart and mental health issues," constitute extraordinary and compelling circumstances necessitating compassionate release under the "medical condition" scenario in subdivision (A) of U.S.S.G. 1B1.13, Application Note 1.[3] Dkt. 74.

---

[3] The "medical condition of the defendant" may constitute an extraordinary and compelling reason for release where:

    (A)    Medical Condition of the Defendant.—

    (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples

MEMORANDUM DECISION AND ORDER - 5

Allen's BOP medical records indicate that he has major depressive disorder, posttraumatic stress disorder, epilepsy/seizure disorder (unwitnessed/no documentation), migraines, essential (primary) hypertension, periapical abscess with sinus, aggressive periodontitis (localized), cellulitis (unspecified), edema (unspecified). Dkt. 77-1, at 81. Allen further advocates that his ill wife is a sufficient reason for his release under subsection (C)—family circumstances. Dkt. 74, at 4–5. In support of this later reason, Allen attaches a nurse's letter dated 12/13/19. Dkt. 74-1, at 1. The Court considered that letter—written 13 months before sentencing and almost two years before the instant request—at sentencing, but it bears no weight in the instant motion. While it is true that caring for one's spouse *could* qualify under subsection (C),[4] Allen has not provided enough information for the Court to make such a determination. Allen states he is "currently" his wife's primary caregiver. However, such is impossible as Allen is incarcerated. He does not explain who is currently taking

---

   include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii)   The defendant is—

(I)    suffering from a serious physical or medical condition,

(II)   suffering from a serious functional or cognitive impairment, or

(III)  experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, Application Note 1(A).

[4] *See* e.g., *United States v. Lowery*, 2021 WL 1851903, at *2 (D.N.J. May 7, 2021) (stating "certain family circumstances exist where the defendant would be the only available caregiver for his or her minor child, spouse, or registered partner").

MEMORANDUM DECISION AND ORDER - 6

care of his wife. Clearly Allen is not the "only available caregiver" because someone is (presumably) taking care of his wife right now—or she is capable of caring for herself. In short, the Court does not have the full picture and the only documentation Allen provides in support of this request is dated. This portion of Allen's request is denied without prejudice.

Thus, the Court concerns itself solely with Allen's "medical conditions" request.

As an initial matter, the Court notes that Allen's age and some of his medical conditions likely do place him at a higher risk of contracting a severe form of COVID-19. The CDC lists various heart and coronary conditions as underlying health conditions that can place individuals at an increased risk of severe illness from COVID-19.[5] However, the Government argues, and the Court agrees, that Allen's refusal to be fully vaccinated weighs heavily against a finding of extraordinary and compelling circumstances.[6]

The Government points out that many courts have found that prisoners who refuse COVID-19 vaccinations cannot present extraordinary and compelling circumstances, even in the presence of underlying health conditions. *See United States v. Jackson,* 2021 WL 1145903 (E.D. Pa. Mar. 25, 2021) (noting that a prisoner suffering from obesity, type II diabetes, hypothyroidism, hypertension, asthma, and high cholesterol did not present extraordinary and compelling circumstances because there was "no apparent medical

---

[5] *CDC Updates, People with Certain Medical Conditions,* (Updated May 13, 2021) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[6] Allen claims that sometime after his initial refusal, he requested the COVID-19 vaccine and is now fully vaccinated. Dkt. 78, at 1–2.

MEMORANDUM DECISION AND ORDER - 7

reason" that the prisoner declined the vaccine); *United States v. Austin*, 2021 WL 1137987, *2 (E.D. Mich. Mar. 25, 2021) (holding that "[a] prisoner cannot on the one hand point to the risk of severe illness, while on the other hand refuse to participate in basic precautionary measures such as vaccination"). The Court agrees with this reasoning. It makes little sense for a prisoner to argue that he must be released because of the risk posed by COVID-19 while at the same time refusing to complete a readily available vaccine treatment that mitigates that risk almost entirely. Indeed, doing so would likely encourage prisoners to remain unvaccinated.

Furthermore, now that Allen is fully vaccinated, his fears based upon COVID are even more remote. *See United States v. Kim*, 2021 U.S. Dist. LEXIS 86830, at *6-7 (D. Haw. May 6, 2021) (denying the defendant's motion because he was fully vaccinated, and there were no active COVID-19 cases at the facility where he was located); *United States v. Steward*, 2021 U.S. Dist. LEXIS 99588, at *7 n.3 (D.N.J. May 25, 2021) (denying defendant's compassionate release motion because the defendant had begun the vaccination process).

Additionally, there is no evidence to suggest that Allen would be at lower risk to contract the virus if he were released. Multiple courts have denied compassionate release to prisoners, even those with high-risk medical conditions, because many of them would likely be less-exposed to the pandemic by remaining at the prison. *See United States v. Singui*, 2020 WL 2523114, at *4 (C.D. Cal. May 12, 2020) (denying compassionate release to inmate with diabetes, high blood pressure, and high cholesterol; observing that "there is little evidence that [the defendant] is presently at greater risk of contracting the virus at

MEMORANDUM DECISION AND ORDER - 8

MDC than in the general population: MDC has no current reported infections, inmates at MDC are housed in separate units, and the staff at MDC has undertaken a variety of interventions [] to prevent the virus from reaching and spreading within the prison"); *United States v. Hembry*, 2020 WL 1821930, at *2 (N.D. Cal. Apr. 10, 2020) (denying motion for inmate with diabetes based on COVID-19 risks where, *inter alia*, the incarcerated movant was "housed at a facility with no reported infections"). Indeed, as of February 2, 2022, FCI Sheridan is reporting 167 active cases among inmates and eight active cases among staff.[7] Allen indicates that upon release he would reside with his wife, presumably at her address in Boise, Idaho. As of February 2, 2022, Ada County has had roughly 91,000 cases and 927 deaths due to COVID-19.[8]

The Government also argues that the 18 U.S.C. § 3553(a) factors weigh against Allen's release.[9] Dkt. 77, at 10–11. The Court agrees. As outlined by the Presentence

---

[7] Federal Bureau of Prisons, COVID-19 https://www.bop.gov/coronavirus/ Information, available at (last accessed February 2, 2022).

[8] Due to a recent surge in case, 42,400 outstanding positive laboratory results are pending local public health district review and follow up. Idaho Division of Public Health, COVID-19 Dashboard. Available at https://public.tableau.com/app/profile/idaho.division.of.public.health/viz/DPHIdahoCOVID-19Dashboard/Home (last updated February 2, 2022).

[9] Factors To Be Considered in Imposing a Sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—[. . .]

    (2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

MEMORANDUM DECISION AND ORDER - 9

Investigation Report, Allen's home contained ten different firearms, multiple rounds of ammunition, and three baggies of methamphetamine. Dkt. 59, at 6. Moreover, Allen has a lengthy criminal history that spans three decades. *Id.* at 8–16. While largely dated, that history includes violent and nonviolent offenses and both state and federal felonies. *Id*. And despite multiple, lengthy, prison sentences, Allen has continued to recidivate. The Court agrees with the Government's argument that the public is currently best protected by Allen's continued incarceration. The Government's arguments here are persuasive, but the Court need not determine if they alone would have been sufficient to deny the present motion given the lack of extraordinary and compelling reasons.[10]  As such, all four factors set forth in U.S.C. § 3553(a)(2) weigh against releasing Allen early.

In sum, the Court finds that Allen has exhausted his administrative remedies. However, he has failed to demonstrate an "extraordinary and compelling reason" for his release, and has failed to show that such a reduction in his sentence is consistent with the goals of the 18 U.S.C. § 3553(a) sentencing factors. Weighing all relevant factors, the Court cannot depart from its prior sentence and release Allen at this time. Accordingly, the Court

---

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a).

[10] The Court notes the Government has failed to address Allen's arguments surrounding caregiving of his wife as noted in his motion. Dkt. 74. In fact, the Government only addressed Allen's criminal history, risk to the community, refusal to vaccinate, and the health claims arising from COVID-19. Nevertheless, as the Court noted (*see supra* note 4) there is insufficient evidence to establish Allen as the only available caregiver.

must DENY Allen's motion.

## V. ORDER

The Court HEREBY ORDERS:

1. Allen's Motion for Compassionate Release (Dkt. 43) is DENIED.

DATED: February 22, 2022

_____
David C. Nye
Chief U.S. District Court Judge